UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EARL WILLIAMS,

Plaintiff,

v.

PATRICIA CARUSO, DIRECTOR, SHERRY BURT, WARDEN sued in their individual and official capacity and RON MONROE, DIETICIAN, SHARON FAIRBANKS, HEAD DIETICIAN, and GREG HISSONG, FOOD DIRECTOR sued in their individual and official capacities,

Defendants.
_______________________________________/

CASE NO. 2:06-CV-12381-DT
JUDGE NANCY G. EDMUNDS
MAGISTRATE JUDGE PAUL KOMIVES

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (docket #16)**

I. RECOMMENDATION . . . 1
II. REPORT . . . 1
A. *Background* . . . 1
B. *Legal Standards* . . . 5
1. *Summary Judgment Standard* . . . 5
2. *Section 1983 and Eighth Amendment Medical Claims* . . . 6
C. *Analysis* . . . 10
1. *Defendants Caruso & Burt* . . . 10
2. *The Remaining Defendants* . . . 11
3. *Plaintiff's Lack of Available Remedies* . . . 12
D. *Conclusion* . . . 13
III. NOTICE TO PARTIES REGARDING OBJECTIONS . . . 14

* * * * *

I. RECOMMENDATION: The Court should grant defendants' motion for summary judgment (docket #16).

II. REPORT:

A. *Background*

The basic facts underlying this action are not in dispute. Plaintiff Earl Williams ("Plaintiff")

"has been on a renal diet since 1998[,]" and began kidney dialysis treatments during November 2000. *See* Compl., ¶¶ 11-12. From 1999 to 2004, he was incarcerated at various Michigan Department of Corrections (MDOC) facilities, including Egeler Correctional Facility (SMN) in Jackson, Michigan; Parnall Correctional Facility (SMT) in Jackson, Michigan; and Ryan Correctional Facility (RRF) in Detroit, Michigan. On March 13, 2004, plaintiff was transferred from RRF to Southern Michigan Correctional Facility (JMF) in Jackson.[1] According to plaintiff, as a cost-saving measure, kidney dialysis patients (KDPs) were transferred to JMF where they could be sent to Foote Hospital in Jackson, Michigan for hospitalization instead of Detroit Receiving & Harper Hospitals.

Plaintiff claims he received a proper renal diet "while at [three] other prisons in the Jackson area under the supervision of Sharon Fairbanks the Head Dietitian[.]" Compl., at 21.[2] Plaintiff claims that "[o]nly when [he] came to JMF did his diet become extremely inconsistent with a [renal diet]." *Id*. at 8, ¶ 13. On March 24 or 25, 2004, plaintiff met with JMF Dietitian Ron Monroe. Approximately one month after plaintiff arrived at JMF, he "complained to Dr. Camann about his diet[,]" and Dr. Camann "made an appointment for Plaintiff to see . . . Monroe[.]" Compl., ¶ 15. On February 3, 2005, plaintiff again met with Monroe. *See* Def.s' Br., Ex. 2, ¶ 16. Plaintiff was prescribed a renal diet to expire on August 3, 2005. The prescribed diet consisted of a renal diet

---

[1]It appears that plaintiff claims he arrived at JMF on or about April 14, 2004. *See* Compl., ¶¶ 24, 27. However, in his response to defendants' motion for summary judgment he also claims KDPs were transferred to JMF on March 15, 2004.

[2]Presumably, plaintiff is referring to the G. Robert Cotton Correctional Facility (JCF), SMN and SMT. *See* Compl., ¶¶ 35-36.

setting maximums of 110 mg of protein, 2 mg of sodium, and 2 mg of potassium. *See id.*, ¶ 8.[3] According to plaintiff, Monroe increased his diet from 90 mg protein to 110 mg protein.

During February and March 2005, plaintiff filed several grievances regarding his diet. *See* Compl., at 25. Relevant here, plaintiff filed three grievances:

- The first grievance, **JMF-05-02-00300-09D**, was initiated on or about February 15, 2005 and was denied at Step II by Warden Sherry L. Burt on April 19, 2005. It concerned "receiving hazardous and even poisonous food to kidney dialysis patients."

- The second grievance, **JMF-05-02-00313-012H**, was apparently initiated during February 2005, was received at Step II on March 14, 2005, and was deemed resolved by Alfred Jones at Step II on March 29, 2005. The Step III response denying the grievance was prepared by N. Martin on April 14, 2005 and was approved by Jim Armstrong on April 19, 2005. It concerned "not receiving the <u>proper renal diet</u> as recommended by the Kidney Foundation."

- The third grievance, **JMF-05-03-00382-12H3**, was apparently initiated during March 2005, was responded to by Mary Jo Marshall and reviewed by Sherri G. that same month, and was denied by Alfred Jones at Step II on April 11, 2005. The Step III response denying the grievance was prepared by A. Fairbanks on May 16, 2005 and was approved by Jim Armstrong on May 24, 2005. This grievance too concerned a renal diet.[4]

On April 13, 2005, while these grievances were pending, plaintiff spoke with Burt's Administrative Assistant Maclane. *See* Compl., ¶¶ 21, 29. On that same day, plaintiff wrote to Maclane and

---

[3]Attached to Fairbanks' January 25, 2007 affidavit are Sunday through Saturday Cycle A-4 diet slips. However, plaintiff contends that these are "fraudulent diet slip[s] that they assert [he] was getting[,]" and maintains that the "diet slips in [his] initial filing accurately represent what [his] diet was then and now."

[4]Plaintiff attended dialysis meetings held on March 31, April 28, May 26, and June 23, 2005. According to plaintiff, Fairbanks "admitted during a Dialysis Meeting <u>which [he] attended</u>, that many items on this diet [were] inconsistent with a Renal Diet." Plaintiff has supplied an affidavit, signed under penalty of perjury by KDPs Joe Cooper (#235317), Gregory Butts (#247237), Lutettus Perry (#376022), Herman Fulton (#142202), Mark Robinson (#161502) and John Morton (#307320). This documents swears to a May 26, 2005 conversation between Fairbanks and plaintiff. It also mentions the letter from plaintiff to Hammond.

attached diet line menus for cycle 1-4. In his letter, plaintiff claims that JMF has abandoned the renal diet at the expense of the KDPs health, safety and welfare.

Plaintiff also engaged in other communications regarding his diet. On April 15, 2005, plaintiff wrote to Hammond regarding the "so-called renal diet[.]" On April 21, 2005, plaintiff wrote to Burt regarding a "real renal diet." On April 25, 2005, plaintiff completed an urgent medical health care request seeking a follow up from Dr. Camman regarding a renal diet. Plaintiff sent intramural correspondence regarding his diet to Fairbanks on April 26, 2005. Plaintiff met with Krieghoff on April 28, 2005. Doc. Ent. 26 at 23. On June 12, 2005, plaintiff wrote to Krieghoff regarding the logging of discussions on a renal diet. On June 17, 2005, plaintiff wrote to an un-named dietician regarding verification of menus for a renal diet.

Plaintiff, proceeding *pro se,* filed the instant case on May 26, 2006, pursuant to 42 U.S.C. § 1983 and the Eighth Amendment. Defendants are Patricia Caruso, Director of the MDOC; Sherry Burt, JMF Warden; Ron Monroe, described as a dietician at Egeler Correctional Facility (SMN) / Duane Waters Hospital; Sharon Fairbanks, described as the head dietician at DWH / SMN; and Greg Hissong, the JMF food service director. Plaintiff's complaint alleges an "urgent and immediate medical need" based upon the failure to provide him with a renal diet. Specifically, plaintiff contends that he is "being served foods high in potassium, sodium, and phosphorous." Plaintiff's prayer for relief seeks "financial compensation", as well as a declaratory judgment, injunctive relief, compensatory damages and punitive damages. On March 13, 2007, plaintiff was paroled. *See* www.michigan.gov/corrections, "Offender Search". Plaintiff intends to "continue with this case because of the 3 years of pain, suffering, and a blatant disregard for the health, safety or welfare while at [JMF]."

The matter is currently before the Court on defendants' motion for summary judgment, filed on January 22, 2007. Defendants contend that they are entitled to summary judgment because there is no genuine issue of material fact with respect to whether they were deliberately indifferent to plaintiff's serious medical needs. Further, defendants Caruso and Burt argue that they are entitled to summary judgment because they were not personally involved in devising plaintiff's diet. Plaintiff filed a response February 2, 2007. For the reasons that follow, the Court should grant defendants' motion for summary judgment.

B.  *Legal Standards*

   1.  *Summary Judgment Standard*

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451

(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

    2.    *Section 1983 and Eighth Amendment Medical Claims*

To state a viable § 1983 claim, a plaintiff must allege that: (1) he was deprived of a right, privilege or immunity secured by the Federal Constitution or the laws of the United States; and (2) the deprivation was caused by a person while acting under color of state law. *Doe v. Wigginton*, 21 F.3d 733, 738 (6th Cir. 1994). Further, the Supreme Court has made clear that liability in a §

1983 action cannot be based on a theory of *respondeat superior*. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Thus, "[t]o recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right." *Diebitz v. Arreola*, 834 F. Supp. 298, 304 (E.D. Wis. 1993). In other words, in order to state a claim under § 1983 "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights. Liability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (per curiam); *see also*, *Carr v. Parker*, No. 98-6395, 1999 WL 1206879, at *1 (6th Cir. Dec. 9, 1999); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998). As the Sixth Circuit has stated:

> "Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. *At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate*."

*Taylor v. Michigan Dep't of Corrections*, 69 F.3d 73, 81 (6th Cir. 1995) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (emphasis added)) (emphasis by *Taylor* court); *see also*, *Monell*, 436 U.S. at 693-95; *Birell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989); *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986); *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982); *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976). Furthermore, an allegation that a supervisor was aware of an actionable wrong committed by a subordinate and failed to take corrective action "is insufficient to impose liability on supervisory personnel under § 1983." *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). As the *Haydon* court stated: "A supervisory official's failure to control, or train the offending individual is not actionable, unless the supervisor 'either encouraged the

specific incident or in some other way directly participated in it.'" *Haydon*, 853 F.2d at 429 (quoting *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)).

The Eight Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. In its purest sense, the Eighth Amendment proscribes cruel and unusual punishment meted out in a penal or disciplinary sense. In its application by the courts, the amendment actually protects a wide assortment of interests. It proscribes disproportionate punishments, *see Weems v. United States*, 217 U.S. 349, 366-67 (1910), "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86 (1958) (plurality opinion). *See generally, Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986).

The Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). On the other hand, it does not permit inhumane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also*, *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The amendment imposes affirmative duties on prison officials, "who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id*. (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

If the offending conduct is not a criminal penalty, then it must reflect an "'unnecessary and wanton infliction of pain'" to come within Eighth Amendment's prohibition on cruel and unusual

punishment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Such claims must satisfy both an objective and a subjective test. *See Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). The plaintiff bears the burden of proving these elements by a preponderance of the evidence. *See Brooks*, 39 F.3d at 127-28.

The objective prong asks whether the harm inflicted by the conduct is sufficiently serious to warrant Eighth Amendment protection. *See McMillian*, 503 U.S. at 8-9; *Rhodes*, 452 U.S. at 349 (1981). To satisfy this prong, the conduct must deprive the plaintiff of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 349. The objective component is contextually driven and is responsive to "'contemporary standards of decency.'" *McMillian*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 103).

The subjective prong asks whether the officials acted with a sufficiently culpable state of mind; that is, was the conduct "wanton." *Wilson*, 501 U.S. at 302; *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). In determining whether an official acted wantonly, the court applies a "deliberate indifference" standard. *Wilson*, 501 U.S. at 302-03; *see Estelle*, 429 U.S. at 104-06. Under this "deliberate indifference" standard,

> a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.

*Farmer*, 511 U.S. at 847. A prison official is not free to ignore obvious dangers to inmates, and may be liable even if he does not know the exact nature of the harm that may befall a particular inmate.

*See id*. at 843-44. However, prison officials may escape liability if they show that they in fact did not know of the obvious risk to the inmate's health or safety, or knowing of it, they acted reasonably under the circumstances. *See id*. at 844-45. In short, "'[d]eliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice." *Wright v. Taylor*, 79 Fed. Appx. 829, 831 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 835-36; *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)).

Plaintiff's claims that defendants denied him a medically necessary diet are governed by these objective and subjective tests, as explained by the Supreme Court in *Estelle*, *supra*. In *Estelle*, the Court held that "[r]egardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 105. Thus, a court faced with failure to treat claims have a two-fold inquiry: (1) does the plaintiff's complaint involve "serious illness or injury"?–*i.e*, the objective prong of the Eighth Amendment analysis; and (2) if so, were the defendants deliberately indifferent to this serious illness or injury?–*i.e.*, the subjective prong of the Eighth Amendment analysis. *See generally*, *Durham v. Nu'Man*, 97 F.3d 862, 868-69 (6th Cir. 1996).

C. *Analysis*

1. *Defendants Caruso & Burt*

Plaintiffs claims against defendants Caruso and Burt are based on their alleged failures to ensure that he received a proper renal diet. However, both Caruso (the MDOC Director) and Burt (the Warden at the prison), aver in their affidavits that they have no role whatsoever in devising or implementing diets for prisoner's with special needs. Plaintiff presents no evidence to dispute these averments. As noted above, § 1983 liability cannot be premised on *respondeat superior* theory. In

particular, as prison administrators they were entitled to rely on the decisions made by medical personnel. *See Bond v. Aguinaldo*, 228 F. Supp. 2d 918, 920 (N.D. Ill. 2002); *Shelton v. Angelone*, 148 F. Supp. 2d 670, 678 (W.D. Va. 2001). Accordingly, the Court should grant defendants' motion for summary judgment with respect to plaintiff's claims against defendants Caruso and Burt.

2. *The Remaining Defendants*

The Court should likewise grant defendants' motion for summary judgment with respect to plaintiff's claims against the remaining defendants, because he cannot demonstrate a genuine issue of material fact with respect to the subjective prong of the *Farmer* deliberate indifference test. As noted above, to establish that defendants were deliberately indifferent to his needs as a dialysis patient, plaintiff must show that they recklessly disregarded a known risk of substantial harm; it is not enough that defendants were negligent or even grossly negligent in devising and implementing his diet. Plaintiff's claims cannot meet this high hurdle.

To be sure, the evidence establishes some disputes between plaintiff and defendants regarding whether his diet comports with the renal diet recommended by the National Kidney Foundation. However, whatever problems there may have been with the diet there is no dispute that defendants repeatedly met with plaintiff and other dialysis prisoners to discuss menu and diet issues in general, and to tweak the diet program and food offerings. Both plaintiff's complaint and defendants' affidavits establish as much. While plaintiff alleges that defendants' responses have been inadequate or have failed to accommodate his dietary needs, nothing he alleges comes close to establishing the kind of reckless disregard necessary to establish that defendants were deliberately indifferent to his medical needs, and the repeated attempts by defendants to meet with dialysis

prisoners and adjust their diets belies such a claim.[5] *See Vandiver v. Correctional Medical Servs., Inc.*, No. 05-CV-72835, 2006 WL 2516902, at *4 (E.D. Mich. Aug. 29, 2006) (Cleland, J.); *Riggins v. Lane*, No. 90 C 3242, 1991 WL 128644, at *3-*4 (N.D. Ill. July 11, 1991); *Brawner-El v. DeRamus*, No. 88-8368, 1989 WL 13661, at *1 (E.D. Pa. Feb. 16, 1989); *cf. Kirkham v. Wilkinson*, 101 Fed. Appx. 628, 630 (6th Cir. 2004); *Gerber v. Sweeney*, 292 F. Supp. 2d 700, 706-07 (E.D. Pa. 2003).

At most, plaintiff's evidence shows that defendants were ultimately unsuccessful in their attempts to accommodate his dietary needs. It does not show, however, that defendants were deliberately indifferent to those needs. Accordingly, the Court should grant defendants' motion for summary judgment.

    3.    *Plaintiff's Lack of Available Remedies*

In addition, the Court may dismiss plaintiff's claims because there is no remedy available to him for the alleged violation of his Eighth Amendment rights. Primarily, plaintiff seeks declaratory and injunctive relief declaring that his rights have been violated and ordering the provision of a proper renal diet. However, plaintiff has now been paroled. Because he is no longer incarcerated, plaintiff's claims for declaratory and injunctive relief are moot. *See Dellis v. Corrections Corp. of Am.*, 257 F.3d 508, 510 n.1 (6th Cir. 2001); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1039 & n.9 (E.D. Mich. 2005) (Roberts, J.).

Plaintiff also seeks "financial compensation" in his complaint, and any claim for damages

---

[5]Plaintiff asserts that defendants are deliberately "poisoning" dialysis prisoners by refusing to provide a proper diet in order to save money. However, this assertion is based solely on plaintiff's belief, and is not supported by any evidence. Plaintiff's conclusory assertion is insufficient to withstand summary judgment.

is not rendered moot by his release from prison. *See Boag v. MacDougall*, 454 U.S. 364, 364 (1982) (per curiam). However, plaintiff alleges only pain and suffering, and that the inadequate diet will cause him future problems with his kidney disease. Pursuant to 42 U.S.C. § 1997e, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Plaintiff's allegations of pain and suffering do not constitute a compensable physical injury under § 1997e(e) in the absence of any showing of actual physical injury. *See Anderson v. D'Amico*, No. 2:06-cv-00663, 2007 WL 121705, at *2 (D. Nev. Jan. 11, 2007); *Eddings v. Herrington*, No. 4:05-CV-138M, 2005 WL 3134045, at *5 (W.D. Ky. Nov. 23, 2005); *Lennear v. Brevard County Jail*, No. 6:05-CV-1364, 2005 WL 3019282, at *1 (M.D. Fla. Nov. 10, 2005); *McClellan v. Pike County*, No. 1:04-CV-2588, 2005 WL 2234645, at *2 (M.D. Pa. Sept. 14, 2005). The possibility that future harm might befall plaintiff is neither itself a compensable injury, or does it constitute "physical injury" for purposes of § 1997e(e). *See Leon v. Johnson*, 96 F. Supp. 2d 244, 248-49 (W.D.N.Y. 2000); *Zehner v. Trigg*, 952 F. Supp. 1318, 1322-23 (S.D. Ind.), *aff'd*, 133 F.3d 459, 461 (7th Cir. 1997). *See generally*, *Mason v. Schriro*, 45 F. Supp. 2d 709, 716 (W.D. Mo. 1999) (discussing cases and concluding that § 1997e(e) "is most frequently applied where the plaintiff alleges that defendant's actions have caused him to fear physical injury . . . but he fails to show any physical injury.").

Thus, even if plaintiff were able to show a constitutional violation, he is entitled to neither declaratory and injunctive relief nor monetary damages. Accordingly, the Court may dismiss plaintiff's claims on this alternative basis.

D.  *Conclusion*

In view of the foregoing, the Court should conclude that there are no genuine issues of material fact with respect to whether defendants Caruso and Burt were personally involved in the alleged deprivation of plaintiff's rights, and that there are no genuine issues of material fact with respect to whether the remaining defendants were deliberately indifferent to plaintiff's medical needs. Further, the Court should conclude that plaintiff's claims for declaratory and injunctive relief are moot, and that his claims for monetary damages are barred by 42 U.S.C. § 1997e(e). Accordingly, the Court should grant defendants' motion for summary judgment.

## III. NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 8/27/07

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on August 27, 2007.

s/Eddrey Butts
Case Manager